People v Torres (2025 NY Slip Op 51556(U))

[*1]

People v Torres

2025 NY Slip Op 51556(U)

Decided on September 30, 2025

Criminal Court Of The City Of New York, Kings County

Whitehair, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 30, 2025
Criminal Court of the City of New York, Kings County

The People of the State of New York

against
Gilberto Torres, Defendant

Docket No. CR-040846-24KN

For the Defendant:
The Legal Aid Society (Nora Wallace of counsel)
For the People:
Eric Gonzalez, District Attorney, Kings County (Thalilaa Charles of counsel)

Christopher E. Whitehair, J.

MOTION FOR LEAVE TO REARGUE
Following adjudication of a suppression hearing conducted on July 28, 2025, and July 29, 2025, Defendant sought leave to reargue a portion of this Court's decision denying suppression of the blood test results obtained as evidence in this case. Specifically, Defendant argues that this Court's ruling was in error since the People did not elicit evidence regarding the credentials of the hospital staffer who withdrew Defendant's blood, thus adherence to the provisions of Vehicle and Traffic Law ("VTL") § 1194 (4) was not established, and suppression is mandated.
The determination of whether to grant leave for a motion to reargue pursuant to CPLR 2221 is left to the sound discretion of the court and "is designed to afford a party an opportunity to establish that the court overlooked or misapprehended the relevant facts, or misapplied any controlling principle of law," but it shall not include any matters of fact or theories of law not offered on the prior motion (CPLR 2221 [d] [2]; Pryor v Commonwealth Title Ins. Co., 17 AD3d 434, 435-436 [2d Dept 2005]). CPLR 2221 is not designed to afford the unsuccessful party successive opportunities to reargue issues previously decided or to present arguments different from those already asserted (Emigrant Bank v Kaufman, 223 AD3d 650, 651-652 [2d Dept 2024], citing McGill v Goldman, 261 AD2d 593, 594 [2d Dept 1999]). Defendant's request for leave to reargue is granted, and this Court will again adjudge the merits of Defendant's original motion seeking to suppress the blood test results. 

FACTUAL FINDINGS
In consideration of Defendant's motion to reargue, this court has reviewed the hearing transcripts and the body-worn camera footage received in evidence. All prior factual findings [*2]are adopted and, as relevant to the narrow issue presented here, this Court finds the following: at approximately 4:30 p.m. on September 27, 2024, Officer Litvinenko received a 911 call regarding an intoxicated driver, later identified as the Defendant (July 28, 2025 tr at 7-10). Upon arrival on scene, Officer Litvinenko's partner spoke with the caller, who explained that after Defendant nearly collided with caller's vehicle, he followed Defendant's vehicle until it came to rest, double parked at a red light (July 28, 2025 tr at 7-9, 31-32). Once Defendant's vehicle was stationary, the caller observed Defendant sleeping behind the wheel, prompting the caller to remove Defendant's keys from the vehicle (July 28, 2025 tr at 8-9). When Officer Litvinenko arrived, she observed Defendant asleep in the backseat of the vehicle, his clothing in disarray (July 28, 2025 tr at 9-10). Officer Litvinenko's body-worn camera, introduced as People's Exhibit 1 without objection, recorded her on-scene observations (July 28, 2025 tr at 21). Based on interactions with Defendant, Officer Litvinenko observed that his speech was slurred, he was unsteady on his feet, and an odor of alcohol emanated from his breath (July 28, 2025 tr at 11). Thereafter, at 4:47 p.m., Defendant was arrested for driving while intoxicated (July 28, 2025 tr at 11; People's Exhibit 1 at 16:47). Following his arrest, Defendant was transported by ambulance to Lutheran Hospital for safety reasons based on his believed level of intoxication (July 28, 2025 tr at 11, 14).
Defendant thereafter arrived at the hospital where, at 6:04 p.m., Officer Tkach [FN1]
inquired whether Defendant would submit to a blood test (People's Exhibit 1 at 18:04; July 28, 2025 tr at 15). In response, Defendant stated, unequivocally, "yes" (People's Exhibit 1 at 18:04). Upon Defendant's reply, Officer Tkach provided a hospital staffer with an NYPD blood test kit (People's Exhibit 1 at 18:05; July 28, 2025 tr at 15). In preparation for the blood draw, the hospital staffer, who noted previous draws where he had been permitted to use hospital supplied needles, asked Officer Tkach whether he could do so again, while acknowledging his understanding that he must use the NYPD provided iodine swab and collection tubes (People's Exhibit 1 at 18:06-18:07). Officer Tkach allowed the use of hospital needles while affirming that the provided iodine swab and collection tubes must be used (People's Exhibit 1 at 18:07). Defendant's blood sample was subsequently withdrawn by the hospital staffer without protest, and the collection tubes containing the specimens immediately provided to Officer Litvinenko who labeled them and placed them in the NYPD collection kit (People's Exhibit 1 at 18:08-18:12). 

 DISCUSSION
Defendant contends that this Court misapplied controlling principles of law, arguing disregard of both the plain text of VTL § 1194 (4) (a) (1) and existing precedent applying the statute. The cited statute concerns administration of testing procedures such as this one, where, at the direction of a police officer, blood is withdrawn from an individual suspected of driving while under the influence of alcohol or drugs (Vehicle and Traffic Law § 1194 [4] [a] [1]). Contained within the statute's text is a delineation of various medical personnel authorized to perform such a blood withdrawal, a restriction of their exposure to liability for any act done or [*3]omitted during the withdrawal, and the provision that non-physician testimony regarding a blood withdrawal may be afforded the same evidentiary weight as one performed by a physician (id.).
In support of his argument, Defendant assuredly claims that suppression is the proper remedy where, as argued here, the evidence fails to establish that the individual administering the blood draw was one authorized under the statute. However, the cases relied upon by Defendant in support of this proposition reveal the dissonance amongst the Appellate Courts regarding the proper remedial forum. Rather than uniformly adopting suppression as the exclusive remedy, several of the cases provided by Defendant treat the issue as one of admissibility (see e.g. People v Moser, 70 NY2d 476 [1987]; People v Casa, 306 AD2d 353 [2d Dept 2003];[FN2]
People v Griesbeck, 17 AD3d 717 [3d Dept 2005]). Given the apparent discord, this Court analyzed the relevant statutes, VTL sections 1194 and 1195, and CPL 710.20, to reconcile this incongruity. VTL § 1195 provides explicit guidance on the handling of chemical test evidence, and is instructive on this issue.
The text of VTL § 1195 separately considers the issues of admissibility and suppression with respect to chemical test evidence (Vehicle and Traffic Law § 1195 [1], [3]). Subdivision one provides that evidence of the amount of alcohol in a defendant's blood shall be admissible at trial when such evidence is acquired in compliance with the provisions of VTL § 1194 (see Vehicle and Traffic Law § 1195 [1]). Separately, subdivision three provides for suppression of chemical test evidence as a remedy only where such evidence is obtained by court-ordered compulsion of submission to the test (Vehicle and Traffic Law § 1195 [3]). Thus, suppression may be an appropriate remedy solely where the evidence at issue was obtained by court order. In contrast, an analysis of adherence to the provisions of VTL § 1194 (4) (a), which Defendant raises here, is instead a question of admissibility at trial (Vehicle and Traffic Law § 1195 [1]; Larry Cunningham, Practice Commentaries [McKinney's Cons Laws of NY, Vehicle and Traffic Law § 1195]; Griesbeck, 17 AD3d at 717). In addition to the plain text of these statutes, Defendant's own argument, implicating the reliability of the test result rather than the lawfulness of its procurement, supports this conclusion. 
Defendant argues that without identifying the individual who withdrew the blood, there is no assurance that the draw was conducted in accordance with mandated Department of Health regulations, specifically, there is no evidence regarding the type of antiseptic used to cleanse Defendant's skin prior to the withdrawal (July 29, 2025 tr at 5). The specific provision cited by Defendant, 10 NYCRR 59.2, governs "[t]echniques and methods for determining blood and urine alcohol," and outlines qualitative directives that must be complied with when analyzing a sample for blood alcohol concentration. The cited provision also includes instruction mandates for the collection of a blood sample, specifically, what type of solution can be used to cleanse the skin area to be drawn from, and a requirement that the sample be clearly identified at the time of collection (10 NYCRR 59.2 [d], [e]). Incorporated within VTL § 1194 (4) (c) is a reference to the application of approved Department of Health regulations governing "satisfactory techniques or methods of conducting chemical analyses of a person's blood," such as the one cited by [*4]Defendant. As such, the issue of the sample's manner of collection is statutorily categorized as a component of the ultimate analysis and determination of the test results, a query of admissibility. Moreover, since the issue raised by Defendant arises from a provision within VTL § 1194, it falls squarely within the admissibility directive of VTL § 1195, requiring adherence to VTL § 1194 as a prerequisite to admissibility (Vehicle and Traffic Law § 1195 [1]).
That admissibility is the proper remedial forum and not suppression finds further support within CPL 710.20 (5), which provides particularized grounds engendering a motion to suppress. With respect to chemical test evidence, that statute prescribes suppression as a remedy reserved solely for challenging evidence obtained by court ordered compulsion.[FN3]
This intentional division of remedies is sound, considering that the principal question to be answered at a suppression hearing is whether the police had lawful cause to take the action that led to the evidence's seizure (People v Cook, 34 NY3d 412, 420-421 [2019], citing People v Merola, 30 AD2d 963, 964 [2d Dept 1968]). Where the test is not conducted upon statutorily implied or express consent, and is instead the consequence of a court order, a determination of whether that order was lawfully obtained naturally implicates the bedrock of a suppression hearing.
Moreover, this Court's analysis is founded in longstanding jurisprudence holding that "a violation of a statute does not, without more, justify suppressing the evidence to which that violation leads" unless "the principal purpose" of that statute is grounded in the protection of a constitutional right (People v Greene, 9 NY3d 277, 280 [2007], citing People v Patterson, 78 NY2d 711, 716-717 [1991], and People v Taylor, 73 NY2d 683, 690-691 [1989]). In Greene, defendant sought suppression of all evidence obtained from a hospital's disclosure of his personal information, which led to his arrest, claiming it was violative of the statutorily derived physician-patient privilege (id. at 279-280). The Greene Court rejected defendant's argument, finding that the relied upon privilege was "based on statute, not the State or Federal Constitution," and it existed "primarily" to regulate a "private relationship" rather than to protect against governmental conduct (id. at 281). Consequently, it conferred no constitutional protections to the defendant, and suppression was an improper remedy (id.).
Similarly, here, the intent underlying the statute's explicit enumeration of personnel authorized to withdraw blood is rooted in the safeguarding of a suspect's health, aimed at ensuring the patient's well-being will not be compromised by the blood draw (see People v Moser, 70 NY2d 476, 478 [1987]). That this is the statute's aim is supported by the remainder — and overwhelming majority — of the subsection, which seeks to shield medical personnel from prospective claims of personal liability regarding incidents arising from the blood withdrawal (Vehicle and Traffic Law § 1194 [4] [2]-[4]). Indeed, rather than conferring rights upon Defendant, the Court of Appeals has recognized the entirety of VTL § 1194 as a statutory authority bestowed upon law enforcement agencies to use as an "important investigative tool" in determining a suspect's blood alcohol content (People v Washington, 23 NY3d 228, 231 [2014]). To that end, the implied consent provision within VTL § 1194 (2) (a) was "designed to encourage those suspected of alcohol-related driving offenses to comply with requests to submit to chemical tests in order to obviate the need for securing court orders" (id.). Thus, the [*5]overwhelming aim of the statute is to facilitate a defendant's safe compliance with chemical testing, not the protection of a defendant's constitutionally derived right. 
Consistent with the foregoing, this Court finds that the issue raised by Defendant is one of admissibility and not suppression. The legislature unequivocally provided the remedy of suppression of chemical test evidence only where that evidence was obtained by court order (Vehicle and Traffic Law § 1195 [3]; CPL 710.20 [5]). Moreover, there is no legal authority, neither supplied by Defendant nor identified by this Court, for the conclusion that VTL § 1194 (4) (a) (1) is a derivation of a constitutional right for which suppression would be a legally justified remedy (Greene, 9 NY3d at 280). Consequently, upon reconsideration, Defendant's motion to suppress is denied as the remedy sought is legally unavailable. The issue of admissibility of the blood test result is reserved for the trial court.

 CONCLUSION
Defendant's motion for leave to reargue pursuant to CPLR 2221 is granted. Upon reconsideration of Defendant's motion, and for the reasons set forth herein, this Court holds that the issue raised is one of admissibility, not suppression, and reserves the decision of admissibility to the sound discretion of the trial court.
This constitutes the Decision and Order of this Court. 
Dated: September 30, 2025
Brooklyn, New York
ENTER:
Christopher E. Whitehair, J.C.C.

Footnotes

Footnote 1: Though Officer Tkach's name was not elicited during testimony, it is visible on his badge in the admitted body-worn camera (People's Exhibit 1 at 18:06).

Footnote 2: Though not readily apparent from the Court's decision, appellant's brief framed the issue as one of admissibility, claiming that the court's error arose from its failure to strike the blood test evidence from the jury's consideration while asserting that the supervising physician's trial testimony was deficient.

Footnote 3: This Court is mindful of the Court of Appeal's decision in People v Ayala, 89 NY2d 874 (1996), however that holding narrowly addressed the scope of a People's interlocutory appeal as the "sole issue."